BRACEY *v.* CRISLER *et al.*[*]

(Division B. June 4, 1928. Suggestion of Error Overruled Sept. 24, 1928.)

[118 So. 138. No. 27234.]

(655)

656

*Corpus Juris-Cyc References: Estoppel, 21CJ, p. 1236, n. 44.

*Howie, Howie & Latham,* for appellant.

*Hendrix & Burkett, Eugene Palmer* and *M. A. Pilgrim,* for appellees.

Augued orally by *Virgil Howie* and *S. A. Latham,* for appellant, and *Eugene Palmer* and *M. A. Pilgrim,* for appellee.

ETHRIDGE, P. J. The appellant filed a bill in the chancery court, alleging that in the year 1914 Ned Bracey

and the said petitioner agreed to become man and wife and by virtue of a common-law marriage, which they were informed and believed they had a right to do, they were married, and lived together as husband and wife in the city of Jackson, said Ned Bracey furnishing a home for himself and petitioner, at which place they lived, cohabited, and held themselves as man and wife for a period of three years, and until Ned Bracey entered the United States Army during the war in 1917; that after the said Ned Bracey had entered the army, as aforesaid, the petitioner received payments from the government at various times to be used for her support, she having been named by her husband as his wife and dependent; that while in the service of the United States as aforesaid, Congress passed an act permitting those in the service of the United States Army during the said war to take out insurance from the United States government up to ten thousand dollars; that petitioner's husband, Ned Bracey, applied for insurance under the act in the amount of ten thousand dollars, naming in the policy the petitioner as wife.

She further alleged that on the 10th day of February, 1919, her husband, Ned Bracey, died, leaving the petitioner, his wife, as his sole heir, one child having been born to the petitioner and her husband, Ned Bracey, during their married life, but had died at birth; that on the 4th day of April, 1925, Chas. W. Crisler was appointed administrator of the estate of petitioner's deceased husband, Ned Bracey, and collected from the United States government the insurance due under the policy, amounting to nine thousand six hundred thirty-eight dollars, the balance of three hundred and sixty-two dollars having already been paid to petitioner by the United States government.

It was further alleged that one Cindy Bracey claimed to be the common-law wife of petitioner's deceased husband, Ned Bracey, and her daughter Peggy claimed to

be his child by reason of the common-law marriage, but that the petition of said Cindy Bracey to establish her claim to the estate of Ned Bracey was denied by this court, on the ground that Cindy Bracey was not shown to have entered into a common-law marriage with said Ned Bracey, nor had they lived together as man and wife, cohabiting as such.

The bill then sets forth certain persons as defendants who are collateral heirs of Ned Bracey, and prayed for them to be made defendants, and to decree that petitioner was the legal wife and lawful heir of the said Ned Bracey, and that the funds be ordered to be paid over to the said petitioner as the lawful heir of Ned Bracey.

The defendants appeared and denied the allegation of said bill as to the marriage between Ned Bracey and Samella Bracey, setting up that they were the lawful heirs of the former, and as such entitled to the insurance in the hands of the administrator, and by way of plea in the said answer they set up that the petitioner is estopped from questioning the correctness of the decree in the former suit, in which Cindy Bracey was adjudged not to be the wife of Ned Bracey, and that the defendants were his lawful heirs, setting forth in the plea that at the January, 1927, term of the court, the petitioner, Samella Bracey, appeared and was entered as a witness, and with knowledge that this court was then endeavoring to ascertain the legal heirs of the estate of Ned Bracey with reference to the money here in question, in the hands of the administrator, at which time she had an opportunity to inform this court of any claim she may have had to the property in question, it being her duty then and there to advise the court of her claim if she had any, but that notwithstanding this fact she not only withheld and concealed from the court her alleged claim, but voluntarily and willfully testified to facts which showed that she intended the court to be informed that her relations with the deceased were illicit, and negative any marital *status*

between her and the deceased by testifying that the deceased promised, when leaving for the United States Army, that he would marry her upon his return, and the findings of the court and the decree rendered in that cause are supported by the testimony of the claimant, petitioners in this suit, and asked to be considered, in connection with said plea, the testimony of the appellant in court record No. 26615, pages 109-112, and that for said reason the claimant be estopped and the petition dismissed.

In the former suit, *Cindy Bracey et al.* v. *Ned Bracey, Deceased, Heirs,* No. 26615, the appellee testified, among other things, as follows:

"Q. What is your name? A. Sam Ella Clayton. . . .

"Q. You say your name is Sam Ella Clayton, or Reed? A. Yes, sir; Sam Ella Clayton.

"Q. Are you married or single? A. Single.

"Q. Did you know Ned Bracey during his lifetime? A. Yes, sir.

"Q. How long did you know him? A. I don't know; I been knowing him a good while.

"Q. Do you know when he was inducted into the United States Army? A. Yes, sir.

"Q. When was that? A. I can't tell you what year it was; me and him was living together at that time.

"Q. You were living together at that time? A. Yes, sir.

"Q. How long did you live together? A. We had lived together two or three years.

"Q. How often was he at your house? A. He was there all the time.

"Q. He was there continually? A. Yes, sir.

"Q. What, if any, provision did he make for you when he was entrained to go to the war; did he make any provision for you to be provided for or not? A. He told me when he left he was going to send me some money.

"Q. Did you ever get the money? A. Yes, sir; he sent me some money.

"Q. Was that an allotment or not from the United States government? A. Yes sir; it was from the United States.

"Q. What statement, if any, did he make to you about what he intended doing when he returned from the war? A. What did he state after he came from the Army?

"Q. What did he say he was going to do when he came from the Army? A. He told me when he returned back we would marry.

"Q. That you would marry when he returned from the war? A. Yes, sir."

The defendant further pleads that the claimant's right to the funds had been adjudicated against her by an officer of the United States, authorized under the act of jurisdiction to determine the question investigated, with jurisdiction for that purpose; that the petitioner was not entitled to the proceeds of the policy, because she was not the wife of the said Ned Bracey; that this adjudication was made upon an inquiry, and upon statement made in an affidavit by the petitioner, Samella Bracey, in which she stated that she was not married to Ned Bracey and did not claim to be his wife. In this affidavit, taken on inquiry by the said United States officer, the petitioner states:

"I lived with Ned Bracey, the deceased soldier, off and on for four or five years before he entered the Army, but I was never married to him and did not regard him as my husband. I had one child by Ned Bracey, but this child was stillborn. I do not know whether Ned was going with any other woman while he was living with me. He told me that there was another child that some woman laid onto him, but this child was not really his. This is all I know about any other children belonging to Ned." "I deny that Clim or Joe Smith ever lived with me or that I ever had illicit sexual intercourse with him at any time. Clim Smith and his wife lived in the same house with

Ned and me a short time in the year 1917. Both Clim and his wife moved out of the house before Ned went into the Army.''

It appears in the proceeding before the chancellor, on the hearing of the issues and pleadings as to estoppel, that the petitioner made the said affidavit, and testified as above set forth. It also appeared that Ned Bracey had taken out the insurance policy, naming the petitioner therein as his wife, and also that he had applied for an allowance for said Samella Bracey and his children, and also for his father, and that the claims made in the said application were fraudulent, as, one of children claimed was his sister and not his child, and another of the children named in his application did not exist, and that the claim increased the allowance to an amount greater than the soldier was entitled to have made by the government to the said defendant. After the soldier's death the government, through its agent, interviewed the appellant and explained to her the consequences that must follow false claims made against the government, whereupon she made the affidavit above set out.

On the hearing before the chancellor in the present case, the petitioner undertook to avoid the statement in the former testimony by saying that she was ignorant of her rights in the matter, and denying some of her statements in the transcript in regard to Cindy Bracey and the heirs of Ned Bracey. It is argued that no estoppel applies because the statements were made in ignorance of her right, and also because no prejudice or harm resulted to the appellee from her said statement and conduct. The chancellor held that she was estopped, and in his opinion states that her testimony was influential in the decision of the case of *Cindy Bracey* v. *Ned Bracey,* and if she had disclosed her claim at that time, that the proceedings in that case would have been stopped until she was brought in and her claim propounded, and all

of the matters would have been adjudicated in that suit. She made no claim at the time she appeared and testified to being the wife of the deceased soldier, but her evidence clearly disclosed that at that time she understood she was not the wife of the deceased soldier.

It may be true that she did not understand what the law required to constitute a valid marriage, but she certainly did understand the understanding and agreement between her and the said Ned Bracey. The correspondence in the record before the chancellor showed that the soldier intended to marry the petitioner upon his return from the Army, and we think the chancellor was warranted in finding that when she testified before the court in the former suit, and also when she made the affidavit before the officer of the Federal government, that she understood the real relations existing between her and Ned Bracey.

By reason of the affidavit filed with the United States government it became necessary for some one to set up a claim to the proceeds of the policy, and the administration was taken, and the proceedings instituted by the appellee, for the purpose of obtaining the insurance money; and when the administrator collected these funds, they were claimed by Cindy Bracey, who attempted to establish herself as the common-law wife of the deceased soldier. The appellant must have understood the facts at that time, and if she was living with the soldier as his wife, and understood that she was his wife, she could easily have disclosed these facts to the court in the former proceedings. However, she let the litigation proceed at the expense of the appellees, and let them prosecute that suit to final judgment in this court, and then undertook to set up her own claim after this expense and trouble.

We think the chancellor was warranted in believing that the claim propounded at this late day, and the testimony in support of this claim, were fictitious and simu-

lated. He had ample evidence before him to warrant him in his finding, and the judgment sustaining the plea of estoppel, on the showing and the evidence, must be affirmed.

*Affirmed.*